**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LINETTE FOX, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

ARCADIA CONSUMER HEALTHCARE INC., a Delaware corporation,

Defendant.

Case No.:

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff LINETTE FOX, individually and on behalf of all others similarly situated, bring this action based upon personal knowledge, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation of their attorneys.

## NATURE OF THE ACTION

1. Defendant Arcadia Consumer Healthcare Inc. is a corporation headquartered in Bridgewater, New Jersey, that, among other things, manufactures and sells consumer healthcare products.

2. Defendant sells to retailers for resale certain healthcare products, including products for hair and scalp care, digestive health, vitamins, minerals, and supplements, first aid, oral care, cough and cold, and foot care.[1] Among Defendant's most successful products is its line of Fungi-Nail products sold in Pen, Ointment, and Liquid forms (the "Fungi-Nail products"). Fungi-Nail products are sold by dozens of retailers throughout New York and across the United States.

3. Many consumers, including Plaintiff, bought the Fungi-Nail products for the purpose of treating nail fungus, based on the product's name and other







[1] Defendant categorizes the Fungi-Nail products in its "foot care" line of products, as do retailers. *See* https://arcadiach.com/foot-care/(last accessed Dec. 6, 2024).




advertising that suggests that the product is intended to treat, and effective at treating nail fungus.[2]

4. However, after buying the products based on the false impression that they "CURE AND PREVENT" "NAIL" "FUNGI" with "MAXIMUM STRENGTH" efficacy and applying it to their nails, consumers do not experience any improvement in their health as it relates to the presence of nail fungus.

5. Despite the name "Fungi-Nail," which suggests that the products are intended to treat, and effective at treating nail fungus, the products contain fine print on a back label disclaimer indicating that the product is *not* meant to treat nail fungus, nor is it effective at doing so.[3]

6. Defendant was aware that many consumers do not read some of the products' back label fine print that disclaims the name's assertion and other front-label representations, and was aware its Fungi-Nail products have no ability to treat nail fungus, yet it proceeded to make those claims on the products' front labels, creating the clear impression that such treatment is possible. The product labels are

---

[2] As the graphics make clear, the misleading representations are substantially similar on the packaging for the liquid, pen and spray.

[3] *See, e.g.,* https://funginail.com/faqs/why-does-the-fungi-nail-labeling-say-not-effective-on-nails-and-scalp-if-it-is-called-fungi-nail/(last accessed Dec. 6, 2024).

therefore materially misleading by plainly giving the impression that they treat nail fungus. Hundreds of thousands of consumers have purchased these products with the false belief that they treat nail fungus. Because the Fungi-Nail products do not and cannot treat nail fungus, purchasing consumers have been misled.

7. As a result of Defendant's deceptive and misleading practices, Plaintiff and the Class members were induced to purchase Fungi-Nail products that do not perform as advertised. Defendant has made millions of dollars in fraudulent sales to individuals who Defendant told were receiving a product that is capable of treating nail fungus. Defendant's customers did not receive the benefit of their bargain because the Fungi-Nail products do not treat nail fungus.

## THE PARTIES

8. Plaintiff Linette Fox ("Fox") is a New York citizen residing in Bronx County, New York. On August 3, 2025, Plaintiff Fox purchased from Amazon.com one 0.101-fluid-ounce Fungi-Nail Pen Applicator Anti-Fungal Solution for $8.97. Amazon.com was identified as the seller. The Product was shipped to an address in New York County, New York.

9. Plaintiff Fox would not have purchased the Product, or would have paid less for it, had she known that the Product does not treat nail fungus.

10. Plaintiff continues to suffer from chronic nail fungus and expects to purchase an over-the-counter nail-fungus treatment in the near future. Plaintiff regularly shops through Amazon.com and other New York retailers that sell Fungi-Nail products and expects to encounter the Product again. Plaintiff would purchase the Product if Defendant reformulated it to treat nail fungus as represented. Plaintiff would also purchase the Product for any use for which it is actually effective if Defendant clearly and conspicuously disclosed that it does not treat nail fungus. Because Defendant continues to market the Product using the Fungi-Nail name, nail imagery, antifungal positioning, and fungus-killing representations, Plaintiff cannot presently determine whether the Product has been reformulated or whether its

labeling accurately describes its effectiveness. Plaintiff therefore faces a real and immediate risk that she will again be unable to rely on the Product's labeling when making a purchase decision.

11. Defendant Arcadia Consumer Healthcare Inc. ("Arcadia") is a Delaware corporation with its principal offices located in Bridgewater, New Jersey. Arcadia does substantial business, including selling its health products, in New York, and in the Southern District specifically. Arcadia manufactures, markets, and distributes the Fungi-Nail product line, and it controls the labeling and packaging for those products.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this class action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Plaintiff, a New York citizen, brings this action on behalf of a proposed class of similarly situated individuals against Defendant, a corporation incorporated and with its principal place of business outside the State of New York. The amount in controversy exceeds $5,000,000, and the proposed class includes more than 100 members.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in Bronx County and used a Bronx County billing address in connection with her purchase. The Product was shipped to New York County. Bronx County and New York County are both within the Southern District of New York.

## FACTUAL ALLEGATIONS

14. Plaintiff is an individual who purchased a Fungi-Nail product at Amazon.com. When Plaintiff purchased the product, the product's name "Fungi-Nail" suggested that it is a healthcare product intended for the medical treatment of nail fungus. In addition, the front label reads "Kills Fungus" ("front label claim").

15. The packaging contains qualifying language on non-front panels, including "This product is not effective on the scalp or nails" and, on certain packaging, "Not for nail or scalp fungus." Those statements do not appear on the principal display panel, are not tied to the challenged front-label representations by an asterisk, callout, or other front-label indicator, and are not presented to consumers in a clear and conspicuous manner at the point of purchase. The Amazon listing displayed the Product's name and challenged claims, including through images of the Product and its packaging. Plaintiff did not see before purchase any clear and conspicuous disclosure that the Product was not effective on nails or for nail fungus. Any qualifying language on non-front panels was not displayed clearly and conspicuously at the online point of sale and did not cure the misleading overall message. In any event, the non-front-panel language contradicts rather than clearly qualifies the principal-display-panel message created by the Fungi-Nail name, antifungal positioning, nail imagery, "Clinically Proven to Cure and Prevent Fungal Infections," and "Kills Fungus" representations.

16. Plaintiff read the Product's name and Challenged Representations in the Amazon.com listing and accompanying product images and relied on them when purchasing the Product. Plaintiff believed that the claim "Kills Fungus" for a product named "Fungi-Nail" meant that the Product kills all fungus, including, and especially, nail fungus, including toenail fungus.

17. The statement created a false impression. As Arcadia admits, the product does not kill nail fungus.

18. Plaintiff purchased the Product believing that it would kill nail fungus. She applied the product continuously over a period of several months with no improvement to the fungus on her toenails. Plaintiff received a product that was in fact proven to not kill nail fungus. Plaintiff did not get the product that was advertised.

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action on her own behalf and pursuant to Federal Rule of Civil Procedure 23. Plaintiff intends to seek certification of a class defined as follows (collectively "the Class" or "the Class members"):

> The New York Class: All persons residing in the State of New York who purchased the Fungi-Nail products during the period beginning four years before the date of the filing of the original Complaint to the date of class certification.

20. Excluded from the Class are: (a) Defendant, including any entity in which Defendant has a controlling interest, any parent or subsidiary of Defendant, or any entity controlled by Defendant; (b) the officers, directors, and legal representatives of Defendant; and (c) the judge and the court personnel in this case as well as any members of their immediate families. Plaintiff reserves the right to amend the definition of the Class(es) if discovery, further investigation and/or rulings by the Court dictate that it should be modified.

21. *Numerosity*. The members of the Class are so numerous that the joinder of all Class members is impractical. While the exact number of Class members is unknown to Plaintiff at this time, given the amount of Defendant's Fungi-Nail products sold in New York, it stands to reason that the number of Class members is at least in the thousands. Class members are readily identifiable from information and records in Defendant's possession, custody, or control, such as account information and sales records.

22. *Commonality and Predominance*. There are questions of law and fact common to Class members, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a. Whether Defendant's products contain the name "Fungi-Nail" and whether the products' labels contain the claim "Kills Fungus";

b. Whether Defendant's product labeling created the impression among its customers that its product would kill nail fungus;

c. Whether a reasonable person would have read the statements "Fungi-Nail" and "Kills Fungus" and any accompanying language to mean that the products had been scientifically proven to kill nail fungus;

d. Whether the "ANTI-FUNGAL" product kills nail fungus;

e. Whether it has been scientifically proven that the product kills nail fungus;

f. Whether Defendant knew or should have known that it had not been scientifically proven that the product kills nail fungus;

g. Whether Defendant knew or should have known that the products do not kill nail fungus;

h. The nature of the relief, including equitable relief, to which Plaintiff and Class members are entitled; and

i. Whether Plaintiff and Class members are entitled to damages, and/or injunctive relief.

23. *Typicality*. Plaintiff's claims are typical of those of other Class members because Plaintiff, like the other Class members, purchased "Fungi-Nail" products that claimed, "Kills Fungus," but would not in fact kill nail fungus.

24. *Adequacy of Representation*. Plaintiff will fairly and adequately represent and protect the interests of the Class members. Plaintiff has retained competent counsel experienced in litigation of class actions, including consumer class actions, and Plaintiff intends to prosecute this action vigorously. Plaintiff and Class members have a unified and non-conflicting interest in pursuing the same claims and obtaining the same relief. Therefore, all Class members will be fairly and adequately represented by Plaintiff and her counsel.

25. *Superiority of Class Action*. A class action is superior to other available methods for the fair and efficient adjudication of the claims alleged in this action.

The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims. There will be no difficulty in the management of this action as a class action, and the disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and to the Court. Damages for any individual Class member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied.

26. Class certification is also appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class members, such that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## FIRST CAUSE OF ACTION

**(Fraud)**

27. Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

28. Defendant made affirmative statements on the Product's front label and in uniform marketing, including "Kills Fungus," together with the product name "Fungi-Nail." These statements conveyed that the Product kills nail and toenail fungus. These are the "Challenged Representations."

29. The Challenged Representations were false. The Product is not capable of killing nail fungus as represented.

30. When making the Challenged Representations, Defendant knew they were false or acted with reckless disregard for the truth, intending to induce consumers to purchase at the price charged. Defendant possessed and reviewed information showing the Product is not effective against nail fungus, including internal testing and development records, ingredient specifications that do not achieve fungicidal activity in the nail plate, regulatory materials governing

permissible antifungal claims, and consumer complaint data regarding lack of effect on nail fungus.

31. Defendant also committed fraud by omission. Having chosen to speak about antifungal performance on the front label, Defendant had a duty to disclose material facts needed to make those statements not misleading. Defendant failed to disclose, clearly and conspicuously and at the point of sale, that the Product does not kill nail fungus. Defendant possessed superior and exclusive knowledge of this material fact that was not reasonably available to consumers and intended that consumers, including Plaintiff Fox, rely on the misleading half-truth.

32. Defendant intended that consumers, including Plaintiff Fox, rely on the Challenged Representations and omissions to purchase the Product and to pay the price charged.

33. Particulars of the fraud, what. The Challenged Representations include the front-label statement “Kills Fungus,” the “Fungi-Nail” name, and substantially similar uniform claims that conveyed nail fungus efficacy. The omitted fact is that the Product does not kill nail fungus and does not treat onychomycosis.

34. Particulars of the fraud, when. The Challenged Representations and omissions occurred during the class period. For Plaintiff Fox, the Challenged Representations and omissions occurred on August 3, 2025.

35. Particulars of the fraud, where. The Challenged Representations appeared on the Product’s front label and in the Amazon.com listing from which Plaintiff purchased the Product. The order used Plaintiff’s Bronx County billing address and was shipped to New York County.

36. How the statements and omissions were fraudulent. The statements communicated nail fungus efficacy that the Product does not possess. Any contrary information, if present, was not clear and conspicuous on the front label and did not cure the overall message at the point of purchase. Defendant knew these facts and remained silent about them to induce purchases.

37. Plaintiff Fox saw and read the “Fungi-Nail” name and the Challenged Representations in the Amazon.com listing and accompanying product images before purchasing one 0.101-fluid-ounce Fungi-Nail Pen Applicator Anti-Fungal Solution on August 3, 2025, for $8.97. She relied on the Challenged Representations and the absence of a clear disclosure that the Product does not kill nail fungus. She would not have purchased the Product, or would have paid less for it, had the truth been disclosed.

38. Plaintiff Fox’s reliance was reasonable. The Challenged Representations appeared on the front label as factual performance claims. No clear front-label qualification corrected the misleading message.

39. As a direct and proximate result of Defendant’s fraud, Plaintiff Fox suffered damages. She paid a price premium over the Product’s true value and paid money for a Product that lacked the represented ability to kill nail fungus.

40. Plaintiff Fox seeks rescission or a reduction of the price, together with damages measured by the difference between the price paid and the value received, and any other loss proximately caused by the fraud.

41. Plaintiff Fox also seeks punitive damages for Defendant’s willful and wanton misconduct, along with pre- and post-judgment interest and costs, and all further relief the Court deems just and proper.

## SECOND CAUSE OF ACTION

### (Fraudulent Concealment and Omission)

42. Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

43. Defendant made affirmative statements on the Product’s front label and in uniform marketing, including “Kills Fungus,” together with the product name “Fungi-Nail.” These statements conveyed that the Product kills nail and toenail fungus. These are the “Challenged Representations.”

44. Defendant omitted and concealed material facts necessary to make the

Challenged Representations not misleading. The omitted facts include that the Product does not kill nail fungus and does not treat onychomycosis.

45. A duty to speak arose because Defendant chose to speak about antifungal performance and created a half-truth that would mislead without full disclosure. A duty also arose under the special facts doctrine because Defendant possessed superior knowledge of material facts not readily available to consumers and knew that consumers, including Plaintiff, were acting on the basis of mistaken knowledge created by the front label.

46. Defendant knew the omitted facts or acted with reckless disregard for the truth and intentionally concealed those facts to obtain an unjust advantage and to cause consumers to purchase the Product at the price charged.

47. Defendant intended that consumers, including Plaintiff, rely on the misleading half-truth created by the Challenged Representations and the omission of contrary information.

48. Defendant made and approved the Challenged Representations and withheld the omitted facts.

49. The front-label statement "Kills Fungus," the "Fungi-Nail" name, and substantially similar claims conveyed nail fungus efficacy. The omitted facts are that the Product does not kill nail fungus and is ineffective for onychomycosis.

50. Defendant made these statements during the class period, including Plaintiff's purchase on August 3, 2025.

51. The Challenged Representations appeared on the Product's principal display panel and in the Amazon.com listing from which Plaintiff purchased the Product. The transaction used a billing address in Bronx County, and the Product was shipped to New York County.

52. The front label communicated nail fungus efficacy that the Product does not possess. Any contrary information, if present, was not clear and conspicuous at the point of purchase and did not correct the overall message.

Defendant's silence about the omitted facts rendered the label misleading.

53. Before purchasing the Product, Plaintiff saw and read the "Fungi-Nail" name and the Challenged Representations in the Amazon.com listing and accompanying product images. On August 3, 2025, she purchased one 0.101-fluid-ounce pen applicator for $8.97. Plaintiff was not given a clear disclosure of the omitted facts. Plaintiff relied on the omission and misleading half-truth and would not have purchased the Product, or would have paid less, had the truth been disclosed.

54. Plaintiff's reliance was justifiable because the challenged claim appeared on the front label as a factual performance statement and there was no clear front-label qualification that corrected it.

55. As a direct and proximate result of Defendant's fraudulent concealment and omission, Plaintiff suffered damages, including a price premium and other out-of-pocket losses measured by the difference between the price paid and the value of the Product without the represented attribute.

56. Plaintiff seeks rescission or price reduction, compensatory damages, punitive damages for willful and wanton misconduct, pre- and post-judgment interest, costs, and all further relief the Court deems just and proper.

## THIRD CAUSE OF ACTION

**(Negligent Misrepresentation (pled in alternative to fraud))**

57. Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

58. Defendant had a duty to use reasonable care in communicating information about the Product's performance and efficacy to consumers. A special relationship existed for purposes of this claim because Defendant, in the course of its business, possessed and communicated superior knowledge about the Product's efficacy directly to consumers through uniform labeling and point-of-sale marketing with the intent that consumers rely on it, and Plaintiff was a known and

intended end-user of that information. Defendant's peculiar knowledge of nonpublic facts about nail-fungus efficacy and consumers' inability to verify those facts before purchase further supports this duty.

59. Defendant made the "Kills Fungus" representation without reasonable care or competence to verify its truth. Defendant should have known the statement was false or misleading based on information available to it, including testing, ingredient specifications that do not achieve fungicidal activity in the nail plate, regulatory materials, and complaint data.

60. Defendant intended or expected consumers, including Plaintiff, to rely on the representation in deciding whether to purchase and how much to pay.

61. Before purchasing the Product, Plaintiff saw the Challenged Representations in the Amazon.com listing and accompanying product images, relied on them, and purchased one 0.101-fluid-ounce Fungi-Nail pen applicator on August 3, 2025, for $8.97.

62. Plaintiff suffered pecuniary loss as a direct and proximate result, including a price premium and out-of-pocket loss.

63. Plaintiff seeks damages and all other relief allowed.

**FOURTH CAUSE OF ACTION**

**(Deceptive Acts and Practices; N.Y. Gen. Bus. Law § 349)**

64. Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

65. Defendant labeled, advertised, and sold the Product to consumers in New York. The conduct was consumer-oriented and occurred in trade and commerce.

66. The front label states "Kills Fungus," together with the product name "Fungi-Nail." These uniform statements conveyed that the Product kills nail and toenail fungus.

67. The statements were materially misleading to a reasonable consumer.

The Product is not capable of killing nail fungus. Any contrary or qualifying language was not clear and conspicuous at the point of purchase and did not cure the overall message.

68. On August 3, 2025, Plaintiff purchased from Amazon.com one 0.101-fluid-ounce Fungi-Nail pen applicator for $8.97. Before purchase, she saw the Product's name and Challenged Representations in the online listing and accompanying product images. She would not have purchased the Product, or would have paid less for it, had the truth been disclosed.

69. Defendant's deceptive acts caused Plaintiff actual injury, including a price premium measured by the difference between the price paid and the value received without the represented attribute and other out-of-pocket loss.

70. Plaintiff seeks actual damages or statutory damages of at least fifty dollars, whichever is greater, trebling up to one thousand dollars for willful or knowing violation, reasonable attorneys' fees, costs, and injunctive relief that halts the deceptive labeling.

**FIFTH CAUSE OF ACTION**

**(False Advertising; N.Y. Gen. Bus. Law § 350)**

71. Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

72. Defendant made advertising claims, including on the principal display panel, that the Product "Kills Fungus."

73. These claims were false or misleading in a material way.

74. Plaintiff saw and relied on the Challenged Representations in the Amazon.com listing and accompanying product images and purchased one 0.101-fluid-ounce Fungi-Nail pen applicator on August 3, 2025, for $8.97.

75. Plaintiff suffered injury as a result, including a price premium measured by the difference between the price paid and the value received without the represented attribute and out-of-pocket loss.

76. Plaintiff seeks actual damages or statutory damages of at least five hundred dollars, whichever is greater, trebling up to ten thousand dollars for willful or knowing violation, reasonable attorneys' fees, costs, and injunctive relief.

## SIXTH CAUSE OF ACTION

**(Breach of Express Warranty; N.Y. U.C.C. § 2-313)**

**(New York Class)**

77. Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

78. Defendant made affirmations of fact and promises on the label and in marketing that "Kills Fungus," together with "Fungi-Nail." These statements became part of the basis of the bargain.

79. The Product did not conform to the affirmations of fact, because it is not capable of killing nail fungus.

80. Plaintiff purchased one 0.101-fluid-ounce Fungi-Nail pen applicator from Amazon.com on August 3, 2025, for $8.97 in reliance on the express warranty.

81. Plaintiff provided, or Defendant otherwise received, reasonable notice of breach within a reasonable time after discovery, including through pre-suit communications, on July 20, 2026 in writing and through service of this complaint, and Defendant had a fair opportunity to cure but failed to do so.

82. Any attempt to disclaim or limit the express warranty is ineffective because it conflicts with specific affirmations on the principal display panel and is not clear and conspicuous.

83. Plaintiff seeks damages measured by the difference between the value of the goods as warranted and the value as received, incidental or consequential damages where allowed, and pre- and post-judgment interest and costs.

## SEVENTH CAUSE OF ACTION

**(Breach of Implied Warranty of Merchantability;**

**N.Y. U.C.C. § 2-314)**

84. Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

85. Defendant is a merchant with respect to goods of this kind. An implied warranty of merchantability arose that the goods would be fit for the ordinary purposes for which such goods are used and would pass without objection in the trade.

86. The Product was not merchantable at the time of sale because it did not perform as an over-the-counter antifungal that kills nail fungus and did not conform to affirmations on the label and container.

87. Plaintiff purchased one 0.101-fluid-ounce Fungi-Nail pen applicator from Amazon.com on August 3, 2025, for $8.97.

88. Plaintiff purchased the Product from Amazon.com, a retailer in Arcadia's distribution chain. Plaintiff was the intended end user of the Product and, on information and belief, an intended third-party beneficiary of Arcadia's agreements with Amazon.com governing the sale of the Product to consumers and the warranties accompanying that Product.

89. This claim is asserted against Arcadia under the intended-third-party-beneficiary theory alleged above. To the extent the Court determines that privity is required and that Plaintiff does not qualify as an intended third-party beneficiary, Plaintiff reserves the right to amend to assert the claim against the retail seller.

90. Plaintiff provided, or Defendant otherwise received, reasonable notice of breach within a reasonable time after discovery, including through pre-suit communications, on July 20, 2026 in writing and through service of this complaint, and Defendant had a fair opportunity to cure but failed to do so.

91. Plaintiff seeks damages as provided by § 2-714 and incidental or

consequential damages as provided by § 2-715, with pre- and post-judgment interest and costs.

## EIGHTH CAUSE OF ACTION

**(Unjust Enrichment; Pled in the alternative)**

92. Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

93. Plaintiff paid $8.97 to Amazon.com to purchase the Product. Defendant received and retained a portion of that purchase price through its placement and sale of the Product in the retail distribution chain.

94. Defendant appreciated and retained that benefit.

95. It would be inequitable for Defendant to retain the benefit because the Product did not possess the represented performance attribute and the price included a premium attributable to the "Kills Fungus" claim.

96. Plaintiff lacks an adequate remedy at law to the extent legal remedies do not fully restore the benefit unjustly retained.

97. Plaintiff seeks restitution and disgorgement equal to the amount unjustly retained, with interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, pray for relief as follows:

(1) For compensatory damages in an amount to be proven at trial;

(2) For restitutionary damages in an amount to be proven at trial;

(3) Disgorgement of all monies by which Defendant was unjustly enriched through the sale of the mislabeled Product;

(4) Treble damages where available under GBL §§ 349 and 350;

(5) For affirmative injunctive relief requiring Defendant to remove or correct the challenged representations on its products and product packaging;

(6) For costs of suit and litigation expenses;

(7) The establishment of a constructive trust or common fund for the benefit of the Class, as the Court finds appropriate;

(8) Pre- and post-judgment interest, costs, and any further equitable relief the Court deems just and proper;

(9) For Punitive damages to the extent allowed for the common-law fraud counts;

(10) For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and all others similarly situated, hereby demands a jury trial for all claims so triable.

Dated: July 22, 2026

**WILSHIRE LAW FIRM, PLC**

*/s/ Thiago M. Coelho*
Thiago M. Coelho

*Attorneys for Plaintiff and the Proposed Class*