UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINETTE FOX, individually and on behalf of all others similarly situated,<br>*Plaintiff*,<br>- against -<br>ARCADIA CONSUMER HEALTHCARE, INC., a Delaware corporation,<br>*Defendant*. | Case No. 26 Civ. 6232 (AT) (JW) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ARCADIA CONSUMER HEALTHCARE INC.'S MOTION TO STAY; OR, IN THE ALTERNATIVE, TO EXTEND DEADLINE TO RESPOND TO COMPLAINT**

DAVIS WRIGHT TREMAINE LLP
Geoffrey S. Brounell
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020-1104
Phone: (212) 489-8230
geoffreybrounell@dwt.com

*Attorney for Defendant Arcadia Consumer Healthcare, Inc.*

# TABLE OF CONTENTS

**Page**

**Contents**


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. Parties and Issues in This Action .......... 2

B. Related Fungi-Nail Cases .......... 3

C. This Lawsuit Substantially Overlaps with the First-Filed Action, *Hayde* .......... 3

D. Procedural History in Related Fungi-Nail Cases .......... 6

III. ARGUMENT .......... 8

A. The First-to-File Rule Warrants a Stay of Proceedings Pending Resolution of the Central District of California Action. .......... 8

1. *Hayde* and This Action Are Substantially Similar .......... 9

2. The "Balance of Convenience" Favors Stay. .......... 11

3. No Special Circumstances Excuse *Hayde*'s Priority .......... 15

B. A Stay Is Independently Warranted Under the Court's Inherent Powers. .......... 16

C. In the Alternative, the Court Should Stay Arcadia's Deadline to Respond to the Complaint. .......... 17

IV. CONCLUSION .......... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
626 F.3d 699 (2d Cir. 2010)....................8

*Albert v. Blue Diamond Growers*,
232 F. Supp. 3d 509 (S.D.N.Y. 2017)....................9, 13, 14

*Awan v. MTA*,
2025 WL 2855281 (S.D.N.Y. Oct. 8, 2025)....................17

*Baduria v. Sealift Holdings, Inc.*,
451 F. Supp. 3d 248 (E.D.N.Y. 2020)....................16

*Caspian Invs., Ltd. v. Vicom Holdings, Ltd.*,
770 F. Supp. 880 (S.D.N.Y. 1991)....................9

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*,
630 F. Supp. 2d 295 (S.D.N.Y. 2009)....................11

*Credit Suisse Sec. (USA) LLC v. Laver*,
2019 WL 2325609 (S.D.N.Y. May 29, 2019)....................16

*Duffey v. Arcadia*,
2026 WL 2373345 (E.D.N.C. Aug. 14, 2026)....................7

*Employers Ins. of Wausau v. Fox Ent. Grp., Inc.*,
522 F.3d 271 (2d Cir. 2008).................... *passim*

*Est. of Heiser v. Deutsche Bank Tr. Co. Ams.*,
2012 WL 2865485 (S.D.N.Y. July 10, 2012)....................14

*Finn v. Barney*,
2008 WL 5215699 (S.D.N.Y. Dec. 8, 2008)....................13

*Forsher v. J.M. Smucker Co.*,
2019 WL 235639 (E.D.N.Y. Jan. 16, 2019)....................13

*Kappel v. Comfort*,
914 F. Supp. 1056 (S.D.N.Y. 1996)....................11

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir.1991)....................4

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)....................2, 15, 16

*Lasala v. Needham & Co.*,
399 F. Supp. 2d 421 (S.D.N.Y. 2005)....................8, 16

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
17 F. Supp. 3d 385 (S.D.N.Y. 2014)....................9

*Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*,
969 F.2d 1384 (2d Cir. 1992)....................4

*Michel v. Petco Animal Supplies Stores, Inc.*,
404 F. Supp. 3d 685 (E.D.N.Y. 2017)....................8, 9, 10

*Nelson v. G.Skill USA, Inc.*,
2023 WL 3300408, at *3 (W.D.N.Y. May 8, 2023)....................10, 13

*Readick v. Avis Budget Grp., Inc.*,
2014 WL 1683799 (S.D.N.Y. Apr. 28, 2014)....................8, 10, 11

*Regions Bank v. Wieder & Mastroianni, P.C.*,
170 F. Supp. 2d 436 (S.D.N.Y. 2001)....................8, 11

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*,
2018 WL 3849840 (S.D.N.Y. Aug. 10, 2018)....................16

*Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*,
356 F. Supp. 3d 287 (S.D.N.Y. 2018)....................15

*Santana v. Cavalry Portfolio Servs., LLC*,
2019 WL 6173672 (S.D.N.Y. Nov. 19, 2019)....................8, 14

*Specrite Design, LLC v. Elli N.Y. Design Corp.*,
2017 WL 3105859 (S.D.N.Y. July 20, 2017)....................14, 15

*Walsh v. Nelnet Servicing, LLC*,
2025 WL 2022631 (S.D.N.Y. July 18, 2025)....................9

*William Gluckin & Co. v. Int'l Playtex Corp.*,
407 F.2d 177 (2d Cir. 1969)....................8

*Wyler-Wittenberg v. MetLife Home Loans, Inc.*,
899 F. Supp. 2d 235 (E.D.N.Y. 2012)....................9, 10

**State Statutes**

N.Y. Gen. Bus. Law
§ 349......6
§ 350......6

N.Y. U.C.C.
§ 2-313......6
§ 2-314......6

**Rules**

Fed. R. Civ. P.
6(b)(1)......17
23......12

## I. INTRODUCTION

This action is the latest in a series of six putative class actions filed by the same plaintiffs' firm alleging that Defendant Arcadia Consumer Healthcare Inc. ("Arcadia") misled consumers regarding the use and effectiveness of Arcadia's "Fungi-Nail" product line. The first-filed action, *Hayde v. Arcadia Consumer Healthcare, Inc.*, has been pending in the Central District of California since December 2024 and already has progressed through extensive discovery, expert proceedings, dispositive-motion briefing, and class-certification briefing concerning substantially identical allegations. *Hayde v. Arcadia Consumer Healthcare, Inc.*, No. 8:24-cv-02657-JDE (C.D. Cal. Dec. 6, 2024). Counsel has filed five additional lawsuits including this one, asserting the same core allegations on behalf of statewide classes, as well as one on behalf of a purported nationwide class of Arcadia customers. *See Duffey v. Arcadia Consumer Healthcare, Inc.*, No. 5:25-cv-00652-M-KS (E.D.N.C. Oct. 14, 2025) (both putative nationwide and statewide classes); *White v. Arcadia Consumer Healthcare Inc.*, No. 2:26-cv-14082-AMC (S.D. Fla. Mar. 12, 2026); *Kathrein v. Arcadia Consumer Healthcare, Inc.*, No. 3:26-cv-50217 (N.D. Ill. May 28, 2026); *Pisula v. Arcadia Consumer Healthcare Inc.*, No. 1:26-cv-00574-DRC (S.D. Ohio June 8, 2026). On July 22, 2026, Plaintiff Linette Fox filed this action.

Two courts have already addressed this pattern, and neither allowed a duplicative statewide class to proceed alongside the first-filed *Hayde*. The Southern District of Florida granted Arcadia's motion and transferred *White* to the Central District of California under the first-to-file rule and 28 U.S.C. § 1404(a). Both *Hayde* and *White* are now pending before the same judge. The Eastern District of North Carolina stayed *Duffey* under the first-to-file rule pending final disposition of *Hayde*, reasoning that two courts supervising overlapping classes would waste judicial resources and risk inconsistent rulings.

The same result should follow here. Courts in this Circuit recognize that duplicative actions should not proceed simultaneously in multiple forums. Allowing parallel litigation of substantially identical claims risks inconsistent rulings, duplicates discovery and motion practice, and imposes unnecessary burdens on the parties, third-party witnesses, and the courts. Staying this action would further the core purposes underlying both the first-to-file rule and the Court's inherent authority to manage its docket efficiently. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (recognizing courts' inherent authority to stay proceedings in the interest of "economy of time and effort for itself, for counsel, and for litigants"). That is especially so here, where this action was filed after both *Hayde* and *Duffey*, and where *Duffey*'s earlier-filed nationwide class fully encompasses the putative New York class asserted in this case.

Because *Hayde* was filed first and no special circumstances weigh against a stay, the Court should stay this case pending resolution of the Central District of California action. Alternatively, the Court should exercise its inherent authority to stay the case based on the balancing of convenience factors. Should the Court decline to stay the case, Arcadia respectfully requests that the Court extend its deadline to respond to the Complaint to a date no earlier than 30 days after the Court's ruling on this Motion.

## II. BACKGROUND

### A. Parties and Issues in This Action

Arcadia is a Delaware corporation with its principal place of business in Bridgewater, New Jersey. Complaint ("Compl.") ¶ 11. It manufactures over-the-counter medicines, including the Fungi-Nail antifungal products sold in pen, ointment, and liquid forms. *See id.* ¶ 2. Plaintiff alleges that Fungi-Nail products have a front label that states that they can "[c]ure and [p]revent [f]ungal [i]nfections," kill fungus, stop itching and burning, restore skin health, and cure most

athlete's foot. *Id.* ¶¶ 3, 4, 15. The other panels on the package contain disclaimers stating that the product is not effective if applied on top of the nail. *Id.* ¶ 15.

Plaintiff Linette Fox is a New York resident who allegedly purchased a Fungi-Nail Anti-Fungal Pen from Amazon.com on August 3, 2025, and shipped to an address in New York County. *Id.* ¶ 8. Plaintiff is represented by Wilshire Law Firm, PLC ("Wilshire Law Firm"). *Id.* at 18. On July 22, 2026, Plaintiff filed this lawsuit on behalf of herself and a putative New York-wide class of all persons who purchased Fungi-Nail products during the period beginning four years from the date of the filing of the Complaint to the date of class certification. *Id.* ¶¶ 19, 22.

**B. Related Fungi-Nail Cases**

This action is the sixth putative class action filed by the Wilshire Law Firm against Arcadia concerning the labeling of the Fungi-Nail product line, and the fifth filed after *Hayde*: *Duffey v. Arcadia Consumer Healthcare, Inc.*, No. 5:25-cv-00652-M-KS (E.D.N.C. filed Oct. 14, 2025); *White v. Arcadia Consumer Healthcare, Inc.*, No. 2:26-cv-14082-AMC (S.D. Fla. filed Mar. 12, 2026); *Kathrein v. Arcadia Consumer Healthcare, Inc.*, No. 3:26-cv-50217 (N.D. Ill. filed May 28, 2026); and *Pisula v. Arcadia Consumer Healthcare Inc.*, No. 1:26-cv-00574-DRC (S.D. Ohio filed June 8, 2026). *White*, *Kathrein*, and *Pisula* each plead a single statewide class. *Duffey*, filed more than nine months before this action, pleads both a statewide class and a nationwide class. *Duffey* First Am. Compl. ¶ 20, at 5.

**C. This Lawsuit Substantially Overlaps with the First-Filed Action, *Hayde***

This case is, in all material respects, the same as *Hayde*, which was filed in the Central District of California on December 6, 2024—more than twenty months ago. Plaintiff Eric Hayde filed a complaint against Arcadia on behalf of two putative classes of consumers: (1) a California class of all persons residing in California who had purchased Fungi-Nail products in the preceding four years, and (2) a nationwide class of all persons residing in the United States who had done

the same. *Hayde*, Dkt. No. 1 ¶ 17; Dkt. No. 35, Second Amended Complaint ("SAC") ¶ 20, at 5–6 (Ex. A).[1] On August 17, 2026, Hayde moved to certify the putative California class. The *Hayde* class definition is identical to Plaintiff's class definition in this case, with the only difference being geographical scope: California-wide in *Hayde* versus New York-wide in this case before the Court. *Compare* Compl. ¶ 19, at 6 with Ex. A, *Hayde* SAC ¶ 20, at 5–6. This action also overlaps with *Duffey*, filed on October 14, 2025, which asserts a nationwide class that encompasses the statewide putative classes. *See* Ex. D at 5.

In addition to sharing a defendant and parallel class definitions, the *Hayde* and *Fox* lawsuits contain nearly identical key underlying allegations:

| **Key Facts Alleged** | ***Hayde* Second Amended Complaint (C.D. Cal.)** | ***Fox* Complaint (S.D.N.Y.)** |
|---|---|---|
| Plaintiffs purchased Fungi-Nail products and applied the product to their toenails without improvement to their fungal condition. | "Plaintiff Hayde has regularly applied the product to his toenails from the date of purchase, with no improvement to his nail fungus condition." Ex. A, *Hayde* SAC ¶ 8.<br><br>"They applied the product continuously over a period of several months with no improvement to the fungus on their toenails." *Id.* ¶ 19. | "She applied the product continuously over a period of several months with no improvement to the fungus on her toenails." *Fox*, Compl. ¶ 18. |

[1] The operative *Hayde* Second Amended Complaint is attached to this Motion as Exhibit A and is offered to show that such allegations were made therein. The Court may judicially notice the contents of court filings in other cases. *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'") (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir.1991)).

| **Key Facts Alleged** | ***Hayde* Second Amended Complaint (C.D. Cal.)** | ***Fox* Complaint (S.D.N.Y.)** |
|---|---|---|
| Fungi-Nail's front label states that the product "Kills Fungus." | "[T]he front label reads in white capitalized font against a bright red background 'KILLS FUNGUS' ('front label claim')." *Id.* ¶ 15. | "In addition, the front label reads 'Kills Fungus' ('front label claim')." *Fox*, Compl. ¶ 14. |
| Plaintiffs and putative class members do not read or understand Fungi-Nail's back label disclaimers or text concerning efficacy or usage. | "Defendant was aware that many consumers do not read some of the products' back label fine print that disclaims the name's assertion and other front-label representations." *Id.* ¶ 6.<br><br>"Plaintiffs did not read this disclaimer . . . . [A] reasonable consumer who read this language would not understand it to negate the front-label promise . . . . At most, if a reasonable consumer read the disclaimer language (most consumers, like Plaintiffs, would not)." *Id.* ¶ 16. | "Defendant was aware that many consumers do not read some of the products' back label fine print that disclaims the name's assertion and other front-label representations." *Fox*, Compl. ¶ 6.<br><br>"Plaintiff did not see before purchase any clear and conspicuous disclosure that the Product was not effective on nails or for nail fungus. Any qualifying language on non-front panels was not displayed clearly and conspicuously at the online point of sale and did not cure the misleading overall message." *Id.* ¶ 15. |
| Plaintiffs read and relied on the front-label claim, believing it meant the product kills nail fungus. | "Plaintiffs read these statements on the product labels and relied on them when purchasing the products. Plaintiffs believed that the claim 'KILLS FUNGUS' for a product named 'Fungi-Nail' that the product kills all fungus, including, and especially, nail fungus, including toenail fungus." *Id.* ¶ 17. | "Plaintiff read the Product's name and Challenged Representations in the Amazon.com listing and accompanying product images and relied on them when purchasing the Product. Plaintiff believed that the claim 'Kills Fungus' for a product named 'Fungi-Nail' meant that the Product kills all fungus, including, and especially, nail fungus, including toenail fungus." *Fox*, Compl. ¶ 16. |

| **Key Facts Alleged** | ***Hayde* Second Amended Complaint (C.D. Cal.)** | ***Fox* Complaint (S.D.N.Y.)** |
|---|---|---|
| The front-label claim created a false impression, and Arcadia admits the product does not kill nail fungus. | "The statement created a false impression. As Arcadia admits, the product does not kill nail fungus." *Id.* ¶ 18. | "The statement created a false impression. As Arcadia admits, the product does not kill nail fungus." *Fox*, Compl. ¶ 17. |

The lawsuits also share substantially similar legal claims:

| **Legal Claims** | ***Hayde* Second Amended Complaint (C.D. Cal.)** | ***Fox* Complaint (S.D.N.Y.)** |
|---|---|---|
| Intentional misrepresentation/fraud | Ex. A, *Hayde* SAC ¶¶ 28–45. | *Fox*, Compl. ¶¶ 27–41. |
| Fraudulent concealment & omission | n/a | *Id.* ¶¶ 42–56. |
| Negligent misrepresentation | *Id.* ¶¶ 46–55. | *Id.* ¶¶ 57–63 |
| Violation of state's consumer protection statutes | California False Advertising Law (*id.* ¶¶ 56–62); California Unfair Competition Law (*id.* ¶¶ 63–72); California Consumer Legal Remedies Act (*id.* ¶¶ 78–82). | N.Y. Gen. Bus. Law § 349 (*id.* ¶¶ 64–70); N.Y. Gen. Bus. Law § 350 (*id.* ¶¶ 71–76). |
| Breach of warranty | Breach of Express Warranty (*id.* ¶¶ 73–77). | Breach of Express Warranty, N.Y. U.C.C. § 2-313 (*id.* ¶¶ 77–83); Breach of Implied Warranty of Merchantability, N.Y. U.C.C. § 2-314 (*id.* ¶¶ 84–91). |
| Unjust enrichment | n/a | *Id.* ¶¶ 92–97. |

### D. Procedural History in Related Fungi-Nail Cases

On June 25, 2026, the Southern District of Florida granted Arcadia's motion and transferred *White* to the Central District of California, where it now proceeds as *White v. Arcadia Consumer Healthcare Inc.*, No. 2:26-cv-07207-HDV-DSR. *White*, Dkt. No. 19 (S.D. Fla. June

25, 2026) (Ex. B). The court transferred under both the Eleventh Circuit's first-to-file rule and 28 U.S.C. § 1404(a), "for the reasons articulated in Defendant's Motion." *Id*. at 1; *see* Ex. C (Motion to Transfer). On September 8, 2026, the Central District of California recognized *White* as a related case and transferred the case to the same judge as *Hayde*. *White*, Dkt. No. 34 (C.D. Cal. Sept. 9, 2026).

On July 15, 2026, Magistrate Judge Kimberly A. Swank of the Eastern District of North Carolina determined that the *Hayde* action is "sufficiently similar to warrant a stay or transfer pursuant to the first-to-file rule." *Duffey*, Dkt. No. 36 (E.D.N.C. July 15, 2026), Ex. D at 7. On August 14, 2026, U.S. District Judge Richard E. Myers II adopted the recommendation and stayed *Duffey* in its entirety pending final disposition of *Hayde*, reasoning that two courts supervising overlapping classes would waste judicial resources and risk inconsistent rulings. *Duffey v. Arcadia*, 2026 WL 2373345, at *1 (E.D.N.C. Aug. 14, 2026), Ex. E at 2.

Arcadia's motions to transfer or stay in *Kathrein* and *Pisula* have been fully briefed and remain pending. *Kathrein*, Dkt. No. 11 (N.D. Ill. July 1, 2026); *Pisula*, Dkt. No. 7 (S.D. Ohio July 23, 2026).

*Hayde*, meanwhile, is in an advanced posture. Under the current scheduling order, class certification expert discovery closed August 14, 2026. Class certification will be fully briefed on September 18, 2026. *Hayde*, Dkt. Nos. 87, 92, 105 (C.D. Cal. Sept. 4, 2026). On September 4, 2026, Arcadia filed a motion for summary judgment, which will be ripe for the court's consideration on October 8, 2026. *Hayde*, Dkt. No. 101 (C.D. Cal. Sept. 4, 2026).

## III. ARGUMENT

### A. The First-to-File Rule Warrants a Stay of Proceedings Pending Resolution of the Central District of California Action.

"[W]here there are two competing lawsuits, the first suit should have priority." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 722 (2d Cir. 2010) (citation omitted). The purposes of the first-to-file rule are to "avoid duplication of judicial effort, avoid vexatious litigation in multiple forums, achieve comprehensive disposition of litigation among parties over related issues, and eliminate the risk of inconsistent adjudication." *Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F. Supp. 2d 436, 439 (S.D.N.Y. 2001) (citation omitted). The first-to-file rule applies when suits are substantially similar, even if the claims are not identical. *Santana v. Cavalry Portfolio Servs., LLC*, 2019 WL 6173672, at *3 (S.D.N.Y. Nov. 19, 2019). Priority of the first-filed action is presumptive, and only two showings may rebut it: (1) a "balance of convenience" favoring the second-filed action, or (2) "special circumstances which justify giving priority to the second" suit. *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969) (citations omitted). The burden of making either showing rests on "the party seeking to proceed with the second action." *Michel v. Petco Animal Supplies Stores, Inc.*, 404 F. Supp. 3d 685, 689 (E.D.N.Y. 2017).

A district court is vested with broad discretion to dismiss, stay, or transfer a suit that is duplicative of a first-filed action. *AEP Energy Servs.*, 626 F.3d at 724 (finding district court abused discretion by allowing second-filed action to proceed). A court may "enter a stay pending the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action that is to be stayed." *Readick v. Avis Budget Grp., Inc.*, 2014 WL 1683799, at *4 (S.D.N.Y. Apr. 28, 2014) (quoting *Lasala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005)).

### 1. ***Hayde* and This Action Are Substantially Similar**

"[P]arties and claims need not be identical in order for one action to be stayed or dismissed in deference to an earlier action." *Albert v. Blue Diamond Growers*, 232 F. Supp. 3d 509, 512–13 (S.D.N.Y. 2017) (quoting *Caspian Invs., Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880, 884 (S.D.N.Y. 1991)). The first-to-file rule "merely requires 'substantial overlap.'" *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012) (citation omitted). Nor do non-overlapping claims defeat the rule; "the core question is whether 'there are common violations of law alleged.'" *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 393 (S.D.N.Y. 2014) (citation omitted).

***Parties.*** There is substantial overlap between this case and *Hayde* because Arcadia is the defendant in both actions, and the definitions of the putative California class in *Hayde* and the putative New York class are identical except for geographical scope. *Walsh v. Nelnet Servicing, LLC*, 2025 WL 2022631, at *3 (S.D.N.Y. July 18, 2025) (applying first-to-file rule where "theories of both cases overlap" but class members did not). Although it appears the Wilshire Law Firm plans to abandon their nationwide class in *Hayde*, they have not formally done so. In the event they maintain their nationwide class, every member of Plaintiff's proposed New York class falls within *Hayde's* nationwide class definition

The overlap is equally pronounced with *Duffey*, another earlier-filed action, where again, the Wilshire Law Firm has asserted claims on behalf of a nationwide class and has shown no intention of abandoning that class. Every member of Plaintiff's proposed New York class falls within *Duffey's* nationwide class definition. Courts in this Circuit find substantial overlap where an earlier-filed nationwide class covers "a substantial proportion of the putative class members in the instant case." *Michel*, 404 F. Supp. 3d at 689; *see also Walker*, 2026 WL 571302, at *2–3

(finding substantial similarity where nationwide class in first-filed action would have covered plaintiff's statewide class). The Eastern District of North Carolina applied that reasoning in its order staying *Duffey*, finding "substantial similarity between the plaintiff classes" where a statewide class "would be subsumed within any nationwide class." Ex. D at 5; *see* Ex. E at 2.

***Claims.*** An action's claims are substantially similar where "[t]he core inquiry of the two cases" is the same, , *Michel*, 404 F. Supp. 3d at 689, "even if the claims do not perfectly overlap," *Nelson v. G.Skill USA, Inc.*, 2023 WL 3300408, at *3 (W.D.N.Y. May 8, 2023). Here, there is one inquiry: whether "KILLS FUNGUS," paired with the name "Fungi-Nail," misled reasonable consumers and whether the qualifying language on the non-front panels cured that impression. Here, the complaints allege the same label, the same representation, the same falsity, the same failure to cure, and the same categories of relief, often in identical language. *See supra* Section II.B. Their legal theories differ in one respect: Plaintiff invokes New York's General Business Law while *Hayde* pleads violations of California's consumer protection statutes. That difference does not defeat substantial similarity.

In *Readick*, 2014 WL 1683799, at *4, substantial similarity existed between suits brought on behalf of putative classes where the second-filed suit brought claims under New York's Deceptive Practices Statute, while the first-filed suit involved claims under the New Jersey Consumer Fraud Act. The court found the claims were substantially similar because "[b]oth provisions are designed to protect consumers from fraud." *Id.*; *see also Wyler-Wittenberg*, 899 F. Supp. 2d at 245 (the presence of New York state-law claims "does not sufficiently distinguish" a later-filed action from the first-filed action (citation omitted)); *see Duffey*, Ex. D at 5–6 ("[T]he inclusion of additional, state-specific consumer law claims does not prevent application of the [first-to-file rule]"). The same is true of *Duffey*, which was filed more than nine months before

this action and asserts materially identical claims on behalf of both a nationwide class and a North Carolina statewide class. That earlier-filed nationwide class further underscores the substantial overlap between *Fox* and the preexisting litigation.

**2. The "Balance of Convenience" Favors Stay.**

Plaintiff cannot overcome the presumption favoring the first-filed action because the balance of convenience factors favor a stay. Courts in this Circuit weigh five factors to determine whether a stay is proper:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Readick*, 2014 WL 1683799, at *2 (quoting *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)). The second, third, and fifth factors weigh heavily in favor of a stay, and the remaining factors are neutral or weigh only slightly against a stay.

***Interests of the Courts.*** The third factor weighs heavily in favor of a stay. Courts have a strong interest in "promoting judicial efficiency and 'minimiz[ing] the possibility of conflicts between different courts." *Readick*, 2014 WL 1683799, at *5 (quoting *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009)). Courts also have an interest in refraining from issuing decisions that could be "rendered unnecessary." *Regions Bank*, 170 F. Supp. 2d at 440. *Hayde* is substantially more advanced than this case. The parties there have briefed and resolved dispositive motions, conducted extensive discovery, and briefed class certification. By contrast, this action remains at the pleading stage. A stay would allow the opportunity for one court—already familiar with the product label, the record, and the legal theories—to resolve class certification issues and factual issues, narrowing issues and streamlining this case and allowing this Court the benefit of reviewing those decisions.

Six class actions have been filed across six federal districts by the same plaintiffs' firm, targeting the same product, advancing the same theory, and proposing overlapping consumer classes. Permitting this case to proceed independently would produce duplicative discovery and parallel motion practice on issues already briefed in *Hayde*. It would also create overlap with *Duffey*, an earlier-filed action asserting a nationwide class that encompasses the putative New York class here. District courts could reach opposite conclusions on the identical question of whether the Fungi-Nail label deceives a reasonable consumer. Proceeding simultaneously also creates a substantial risk of inconsistent Rule 23 class certification determinations concerning materially identical alleged misrepresentations, consumer understandings, predominance issues, and damages theories. This concern is particularly compelling where, as here, one court already is actively managing class certification proceedings. Furthermore, any appeals could unnecessarily burden two circuits with the same dispute.

Two courts presented with materially identical actions have already declined to allow a duplicative statewide class to proceed alongside *Hayde*. The Southern District of Florida transferred *White*, a statewide putative class with Florida claims, to the Central District of California. Ex. B at 1; Ex. C at 1. The Eastern District of North Carolina stayed the overlapping nationwide and statewide class claims asserted in *Duffey* pending resolution of *Hayde*. Ex. D at 7; Ex. E at 2.

Taken together, the interests of the courts strongly favor a stay. The *Hayde* court already is managing substantially overlapping claims, discovery, and class-certification issues arising from the same alleged labeling representations. Allowing that court to continue doing so will conserve judicial resources, minimize the risk of inconsistent rulings, and streamline any issues that may ultimately remain before this Court.

***Burden on Defendant.*** The second factor, the private interests of and burden on defendant, also weighs heavily in favor of a stay. Absent a stay, Arcadia will suffer hardship by being forced to simultaneously litigate the same labeling issues in multiple forums. As of today, Arcadia faces six materially identical allegations in multiple federal districts. Each proceeding generates independent discovery obligations, motion practice, and judicial management costs. Thus, "[p]ermitting Plaintiff to engage in discovery in [this] action … would prejudice [Arcadia] through the imposition of premature and potentially duplicative discovery burdens." *Finn v. Barney*, 2008 WL 5215699, at *3 (S.D.N.Y. Dec. 8, 2008) (citation omitted); *Albert*, 232 F. Supp. 3d at 513 (recognizing that proceeding with discovery and motion practice would impose potentially unnecessary burdens on defendant while possible nationwide settlement was pending); *Nelson*, 2023 WL 3300408, at *5 (staying case where class certification briefing in first-filed was underway). A stay would spare Arcadia the burden of litigating substantially identical claims in multiple forums.

***Public Interest.*** The public interest favors a stay. Parallel proceedings risk inconsistent rulings on materially identical certification and merits issues arising from a uniform product label. The Fungi-Nail label is uniform, and the products are "sold by dozens of retailers throughout New York and across the United States." Compl. ¶ 2. Arcadia "controls the labeling and packaging" for the Fungi-Nail line from its offices in Bridgewater, New Jersey. *Id*. ¶ 11. In consumer labeling cases, the operative facts occur where the challenged labeling and marketing decisions were made. *Forsher v. J.M. Smucker Co.*, 2019 WL 235639, at *2 (E.D.N.Y. Jan. 16, 2019). Because *Hayde* will adjudicate the same labeling theory against the same defendant on the same record of the labeling decisions, it is likely to narrow or resolve many of the certification and merits questions presented here. That likelihood is even more pronounced in *Duffey* because Plaintiff's proposed

New York class also is subsumed within the earlier-filed nationwide class asserted. Proceeding in parallel would require this Court to expend resources that "may prove to have been unnecessary," contrary to the public interest. *Est. of Heiser v. Deutsche Bank Tr. Co. Ams.*, 2012 WL 2865485, at *5 (S.D.N.Y. July 10, 2012), *aff'd*, 2012 WL 5039065 (S.D.N.Y. Oct. 17, 2012); *Specrite Design, LLC v. Elli N.Y. Design Corp.*, 2017 WL 3105859, at *6 (S.D.N.Y. July 20, 2017) ("considerations of judicial economy are viewed as relevant to the public interest."). Avoiding conflicting determinations—and the confusion they would create for absent class members and for consumers nationwide who rely on a uniform label—is in the public interest. *See Specrite*, 2017 WL 3105859, at *6 (explaining that courts grant stays where "the possibility of conflicts between different courts will be minimized").

***Private Interests of Plaintiff.*** The first factor weighs only slightly against a stay. Although Plaintiff has an interest in the prompt resolution of her claims, any prejudice from a temporary stay is limited. She alleges no imminent or ongoing physical harm, and this case remains at a pleading stage, while *Hayde* has progressed through extensive discovery and class-certification proceedings involving substantially identical issues. A stay would therefore pause proceedings before any substantive litigation has occurred. Courts routinely grant stays pending resolution of a first-filed class action. *See, e.g.*, *Santana*, 2019 WL 6173672, at *6 (granting stay in favor of first-filed case where plaintiff was represented by same counsel); *Albert*, 232 F. Supp. 3d at 513 (collecting cases).

Plaintiff may argue that a stay risks future deception, but she seeks the same injunctive relief sought in *Hayde*, which is significantly more advanced and will likely reach a decision on the requested relief before *Fox*. *Compare* SAC, *Hayde*, Dkt. 35 ¶¶ 23, 27, and pp. 17–18 *with Fox*, Compl. ¶¶ 22, 26, 78, and pp. 17–18. Nor does Arcadia need to show that *Hayde* will dispose of every New York-based claim. A stay is appropriate if the first-filed action will "settle many and

simplify them all." *Landis*, 299 U.S. at 256. That is the case here. Plaintiff brings the same mislabeling theory and materially identical claims as in *Hayde*. At a minimum, *Hayde* is likely to narrow the issues this Court ultimately must address. The *Hayde* court is already resolving overlapping issues in class certification, dispositive motions, and discovery related to the same allegations. And *Duffey*'s earlier-filed nationwide class already encompasses Plaintiff's proposed New York class. Under those circumstances, the risk of duplicative proceedings regarding the same central factual questions about the Fungi-Nail label outweighs any prejudice to Plaintiff. *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 356 F. Supp. 3d 287, 299–300 (S.D.N.Y. 2018) (concluding that the possibility of duplicative determinations about a "central factual question" and unnecessary expenditures of party and judicial resources outweighed any prejudice resulting from a stay). Nor is the requested stay indefinite. Arcadia seeks a stay only pending resolution of *Hayde* on the merits, a defined endpoint in a case pending since December 2024.

***Interests of Nonparties.*** No nonparty interests would be implicated in a stay of this action, so this factor is neutral. *See Specrite*, 2017 WL 3105859, at *6.

In sum, because the parallel proceedings in *Hayde* are substantially more advanced and are likely to streamline or resolve many of the issues presented here, the balance of convenience decisively favors a stay. Plaintiff therefore cannot overcome the presumption favoring the first-filed action.

### 3. No Special Circumstances Excuse *Hayde*'s Priority

Special circumstances justifying departure from the first-filed rule "are quite rare." *Employers Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008). The Second Circuit has identified only two: an improper anticipatory declaratory judgment action, and a first

suit motivated by forum shopping alone. *Id*. at 275–76; *Baduria v. Sealift Holdings, Inc.*, 451 F. Supp. 3d 248, 253 n.3 (E.D.N.Y. 2020).

Neither applies here. The first circumstance applies when a party "files a declaratory judgment action in an apparent effort to win the race to the courthouse," but Arcadia did not file either suit. *Id.* Nor are there any relevant forum-shopping concerns where both *Hayde and Duffey* were filed well before this action by the same firm that represents Plaintiff here. Compl. at 19.

Plaintiff therefore cannot overcome *Hayde*'s presumptive priority. She will not be able to carry her burden to show that the balance of convenience factors weigh against a temporary stay. And no special circumstance justifies allowing this later-filed action to proceed in parallel.

**B. A Stay Is Independently Warranted Under the Court's Inherent Powers.**

Even if the Court declines to apply the first-to-file rule, a discretionary stay independently is warranted under the Court's inherent authority to manage its docket efficiently. *See Landis*, 299 U.S. at 254. "District courts have broad authority to stay one action pending the outcome of another." *Credit Suisse Sec. (USA) LLC v. Laver*, 2019 WL 2325609, at *2 (S.D.N.Y. May 29, 2019) (Torres, J.) (quoting *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, 2018 WL 3849840, at *2 (S.D.N.Y. Aug. 10, 2018)). "[T]he decision whether to issue a stay is firmly within a district court's discretion." *Id.* (quoting *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005)).

As explained in Section III.A.2, *supra*, the balance of convenience factors support a stay. A stay would avoid duplicative judicial effort by permitting the *Hayde* court to continue addressing the same labeling issues already before it. It would spare Arcadia the burden of litigating substantially identical claims in multiple forums. Absent a stay, Arcadia will suffer hardship by being forced to litigate the same labeling issues simultaneously in multiple forums. The Eastern District of North Carolina recognized the same considerations in *Duffey*, staying that action in its

entirety pending final disposition of *Hayde*, including both the putative nationwide and statewide class claims. Ex. D at 7; Ex. E at 2. Any impact on Plaintiff is minimal because the case is at the outset.

### C. In the Alternative, the Court Should Stay Arcadia's Deadline to Respond to the Complaint.

Arcadia respectfully requests that the Court enter an order clarifying its deadline to respond to the Complaint. "'When an act may or must be done within a specified time,' such as a defendant's deadline to answer or otherwise respond to a complaint, 'the court may, for good cause, extend the time.'" *Awan v. MTA*, 2025 WL 2855281, at *1 (S.D.N.Y. Oct. 8, 2025) (Torres, J.) (quoting Fed. R. Civ. P. 6(b)).

On August 18, 2026, Arcadia filed a Pre-Motion Letter requesting permission to file this Motion and for the Court to stay its deadline to respond to the Complaint until 30 days after resolution of the Motion to Transfer or Stay. Dkt. No. 13 at 1, 4. Plaintiff did not oppose Arcadia's request for an extension of time to respond to the Complaint. Dkt. No. 14 at 2. On September 1, 2026, the Court granted Arcadia's Pre-Motion Letter Request and entered a briefing schedule for Arcadia's anticipated Motion. Dkt. No. 16 at 1. Plaintiff served Arcadia on July 28, 2026, which would make Arcadia's response due on August 18, 2026. *See* Dkt. No. 6 at 2. Requiring a responsive pleading now would generate motion practice that, as discussed above, may result in inconsistent rulings with another federal district. Accordingly, there is good cause under Federal Rule of Civil Procedure 6(b)(1) to extend the deadline for Arcadia to respond to the Complaint. Arcadia respectfully requests that the Court enter an order clarifying that Arcadia's deadline to respond to the Complaint is thirty days after resolution of the present Motion to Stay.

## IV. CONCLUSION

For the above-stated reasons, Arcadia respectfully requests that the Court stay the proceedings until resolution of the *Hayde* action in the United States District Court for the Central District of California. Should the Court decline to stay the case, Arcadia requests that the Court extend its deadline to respond to the Complaint until thirty days after ruling on this Motion.

Dated: New York, New York
September 16, 2026

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: *s/ Geoffrey S. Brounell*
Geoffrey S. Brounell
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax
geoffreybrounell@dwt.com

*Attorney for Defendant Arcadia Consumer Healthcare, Inc.*

**Certificate of Compliance with Word Count Limitations**

I hereby certify that the word count of this memorandum of law complies with the word limits of Local Civil Rule 7.1(c). According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1(c) is 5,371 words.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: September 16, 2026
New York, New York

*s/ Geoffrey S. Brounell*
Geoffrey S. Brounell